UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOISES JIMENEZ,

     Plaintiff,

v.

CAROLE STANYAR, in her Individual
and Official capacities, WAYNE COUNTY
PROSECUTING ATTORNEY, and CITY
OF DETROIT,

     Defendants.

_____/

Case No. 23-
Hon.

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____/

## **PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, MOISES JIMENEZ, by and through his attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendants, CAROLE STANYAR, in her Individual and Official capacities, WAYNE COUNTY PROSECUTING ATTORNEY, and CITY OF DETROIT, stating as follows:

## COMMON ALLEGATIONS

1.      That Plaintiff is a resident of the County of Wayne, State of Michigan and is otherwise domiciled in the State of Michigan.

2.      That Defendant CAROLE STANYAR is a resident of the County of Washtenaw, State of Michigan and is otherwise domiciled in the State of Michigan.

3.      That Defendant WAYNE COUNTY PROSECUTING ATTORNEY is the duly elected prosecuting attorney, a position created by Michigan Constitution, for the County of Wayne, State of Michigan and is otherwise domiciled in the State of Michigan.

4.      That Defendant CITY OF DETROIT is a municipal corporation located within the County of Wayne, State of Michigan and is otherwise domiciled in the State of Michigan.

5.      That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

6.      That this Honorable Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      That venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391.

8. That Plaintiff is of Mexican heritage and identifies as Hispanic.

9. That from 1989 to 1993, Plaintiff served in the United States Army and acted as a military police officer.

10. That Plaintiff achieved the rank of sergeant and was honorably discharged.

11. That as an honorably discharged veteran, Plaintiff is entitled to preference in public employment. *See* M.C.L. § 35.401 *et seq*.

12. That in March 1994, Plaintiff began employment with the City of Detroit Police Department as a law enforcement officer.

13. That in July 1994, Plaintiff completed the Detroit Police Academy.

14. That over the next six (6) years, Plaintiff worked as a law enforcement officer assigned to various precincts and details.

15. That in July 2000, Plaintiff was assigned to the Homicide Section of the Detroit Police Department and subsequently received a promotion to the rank of detective.

16. That over the course of the next twenty (20) years, Plaintiff investigated numerous homicides in the City of Detroit.

17. That at all times material hereto, Plaintiff performed his job duties as a homicide detective in a satisfactory and/or an above-satisfactory manner.

18. That on or about September 22, 2012, an individual shot and killed

fifteen (15) year old, Ileana Cuevas, and injured her sister, Rosalind Barley, and Ms. Barley's boyfriend, Miguel Figeroa, in southwest Detroit.

19.     That on or about September 26, 2012, an individual shot and killed Mr. Figeroa's brother, Thomas Edwards.

20.     That on or about September 26, 2012, Plaintiff was selected to be the Officer-in-Charge for the above two homicides.

21.     That Plaintiff and other officers pursued various leads in the investigation of the above-referenced homicides.

22.     That Plaintiff did investigate a potential led that connected the two murders to a drug dealer that was a significant supplier of heroin in the Detroit area, who shall be referred to as "J.S."

23.     That information provided by the surviving victims of the September 22, 2012 shooting led to the discovery of incriminating information relative to J.S.

24.     That on or about September 27, 2012, Plaintiff submitted an Investigator's Report to the Wayne County Prosecuting Attorney's office, which led to issuance of a warrant for felonious assault and reckless driving by J.S.

25.     That notwithstanding said investigation and information gathering, Plaintiff and other officers could not discover any evidence that directly tied J.S. to the murders.

26.     That on or about October 12, 2012, Plaintiff submitted a warrant request

for the Wayne County Prosecuting Attorney's Office review relative to Alexandre Ansari, who had been identified as the gunman in the above-referenced shootings.

27.    That on or about October 13, 2012, Mr. Ansari was charged with (1) first degree murder of Ileana Cuevas, (2) assault with the intent to murder of Rosalind Barley, (3) assault with the intent to murder Miguel Figueroa, and (4) carrying or possessing a firearm while committing a felony.

28.    That on or about October 16, 2012, Detroit Police Department officers arrested Mr. Ansari.

29.    That on or about November 20, 2012, the Honorable E. Lynise Bryant-Weeks, District Court Judge for the Thirty-Sixth Judicial District Court of Michigan, held a preliminary examination in *People v. Alexandre Ansari*, Case No. 12-63810, and bound Mr. Ansari over.

30.    That between May 6, 2013 and May 14, 2013, Mr. Ansari's first criminal trial occurred.

31.    That on or about May 14, 2013, the Honorable Richard M. Skutt, Circuit Court Judge for the Third Judicial Circuit Court of Michigan, declared a mistrial.

32.    That between September 4, 2013 and September 13, 2013, Mr. Ansari's second criminal trial occurred.

33.    That on or about September 13, 2013, a jury of his peers found Mr.

Ansari guilty of all counts, including first degree homicide.

34.     That on or about September 27, 2013, Mr. Ansari was given a life sentence without the possibility of parole.

35.     That subsequently, in 2018, Mr. Ansari or someone on his behalf submitted an application for review with the Wayne County Prosecuting Attorney's Office Conviction Integrity Unit.

36.     That the Conviction Integrity Unit is a part of a prosecuting attorney's office tasked with investigating claims of actual innocence to determine whether new evidence shows that an innocent person had been wrongfully convicted of a crime and that makes recommendations on how to rectify such situations.

37.     That at all times material hereto, Valerie R. Newman was the Director of the Conviction Integrity Unit.

38.     That at all times material hereto, Defendant Carole Stanyar was an Assistant Prosecuting Attorney within the Conviction Integrity Unit.

39.     That Ms. Newman and Defendant Stanyar were responsible for investigating Mr. Ansari's application for review.

40.     That Defendant Stanyar and the Conviction Integrity Unit did not review the entire Wayne County Prosecuting Attorney Office's file regarding Mr. Ansari's cases.

41.     That instead, Defendant Stanyar and the Conviction Integrity Unit

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

compiled a file that contained approximately 278 pages.

42.     That the complete file from the Wayne County Prosecuting Attorney's Office contains approximately 1,288 pages.

43.     That Defendant Stanyar's and the Conviction Integrity Unit's failure to review the complete file created the false impression that Plaintiff had failed to pursue various leads or did not turn over information to the prosecuting attorney assigned to Mr. Ansari's cases.

44.     That in an effort to make sense of the false conclusion that Plaintiff did not fully investigate the crimes, Defendant Stanyar and the Conviction Integrity Unit developed a facially discriminatory theory that Plaintiff, because he is Hispanic and had family in Mexico, he was afraid of pursuing investigative leads that implicated J.S. and intentionally steered the investigation away from J.S.

45.     That as evidence of such discrimination and on or about September 19, 2018, Defendant Stanyar prepared a memorandum regarding an interview of Plaintiff concerning his investigation of Mr. Ansari.

46.     That as evidence of a discriminatory animus towards Plaintiff based on his race and national origin, Defendant Stanyar manipulated Plaintiff's statements in such a manner to falsely claim that Plaintiff had not investigated J.S. for the murder because Plaintiff "said he did not want to be involved in this because [J.S.] had ties in Texas and Mexico and Jimenez has family in both places."

47.     That on or about February 14, 2019, Defendant Stanyar wrote Wayne County Prosecuting Attorney Kym Worthy a memorandum recommending the exoneration of Mr. Ansari.

48.     That in said memorandum, Defendant Stanyar repeated the false accusations against Plaintiff and further manipulated the false story she had concoted, demonstrating a discriminatory animus:

> The OIC, Moises Jimenez, in this case has now admitted to deliberately failing to investigate [J.S.] because [J.S.] is tied to a powerful Mexican drug cartel. Jimenez has family in Mexico, and Jimenez feared his family would be killed. This distorted every aspect of his investigation and the truth-finding process. . . .
>
> *     *     *
>
> Asked about whether or not he was interested in the [J.S.] Title III phone intercepts, he said he didn't want to know anything about the phones.  At one point during our interview of him, he said that he had family in Mexico, and he "didn't want to end up on the witness stand in the federal case" because he believed that the Mexican drug cartel people would kill his family in Mexico.

49.     That Defendant Stanyar continued to state in said memorandum that the Ansari investigation was being deliberately diverted away from the truth by Plaintiff and that her false rendition of Plaintiff's "own statement suggests a deliberate abandonment of his responsibility. . . ."

50.     That Defendant Stanyar's statements are false and defamatory and demonstrate a discriminatory animus towards Plaintiff.

51.     That Defendant Stanyar would not have made similar false and discriminatory accusations towards a non-Hispanic individual or someone who did

not have family in Mexico.

52.     That Plaintiff did investigate J.S. and submitted a warrant request for felonious assault charges against J.S.

53.     That Plaintiff further did want to know about J.S.'s phones as J.S.'s ten cellular telephones were obtained when J.S. was arrested for the warrant requested by Plaintiff and Plaintiff subsequently swore out search warrants for each telephone J.S. possessed.

54.     That based on Defendant Stanyar's false conclusions, which was in turn based upon an incomplete record, the Wayne County Prosecuting Attorney's Office moved to vacate Mr. Ansari's convictions.

55.     That on or about March 15, 2019, the Honorable Thomas M.J. Hathaway, Circuit Court Judge for the Third Judicial Circuit Court of Michigan, entered an order vacating the convictions and sentences of Mr. Ansari, dismissing all related charges, and order the Michigan Department of Corrections to release Mr. Ansari immediately.

56.     That subsequent thereto, the Wayne County Prosecuting Attorney's Office submitted the Conviction Integrity Unit's incomplete file and the memoranda written by Defendant Stanyar to the Detroit Police Department Integrity Unit.

57.     That Lieutenant Marc DeLuca conducted an internal investigation related to Plaintiff, which directly relied upon statements falsely attributed to him

and conclusions made by Defendant Stanyar.

58.     That on or about January 15, 2020, Lt. DeLuca, relying upon the incomplete file compiled by and the memoranda authored by Defendant Stanyar and the Conviction Integrity Unit, submitted a request for warrant to charge Plaintiff with obstructing justice to the Wayne County Prosecuting Attorney's Office.

59.     That said request for warrant repeats the false allegations Defendant Stanyar created and specifically relies upon Defendant Stanyar's discriminatory and false allegations regarding Plaintiff failing to investigate J.S. due to fears for his family's safety in Mexico.

60.     That the Wayne County Prosecuting Attorney's Office subsequently referred the request for warrant to the Michigan Department of Attorney General.

61.     That on or about April 30, 2020, the Department of Attorney General notified the Wayne County Prosecuting Attorney's Office that it declined to press charges against Plaintiff.

62.     That in August 2020, Plaintiff requested a meeting with Lieutenant Mark Young, president of Plaintiff's union.

63.     That during said meeting, Lt. Young notified Plaintiff that considering Mr. Ansari's exoneration, the Integrity Unit investigation, and the reports from the Conviction Integrity Unit, Plaintiff's termination was inevitable.

64.     That on or about August 12, 2020, and in lieu of termination, Plaintiff

submitted a letter to Chief James E. Craig requesting separation with eligibility for retirement.

65.    That the back of said letter provided numerous spaces for various individuals' signatures and on Plaintiff's letter, Christopher Graveline, Director of the Professional Standards Bureau, wrote, "Detective Jiminez is retiring pending a disciplinary hearing on case 20-0165."

66.    That said notation demonstrates that Plaintiff retired in lieu of termination and suffered a constructive discharge of his employment.

67.    That Plaintiff's last day of work with the Detroit Police Department was September 3, 2020.

68.    That Defendant City of Detroit constructively discharged Plaintiff due to Defendant Stanyar's and the Wayne County Prosecuting Attorney's Office's discriminatory statements and conclusions based thereon.

69.    That Defendants Stanyar and Wayne County Prosecuting Attorney effected a term, condition, or privilege of Plaintiff's employment.

70.    That Defendants' actions constitute race and national origin discrimination in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

71.    That Defendants' actions constitute race and national origin discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act, M.C.L.

§ 37.2202(1)(a).

72.     That Defendants Stanyar's and Wayne County Prosecuting Attorney's actions constitutes race and national origin discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2302(a).

73.     That Defendants Stanyar's and Wayne County Prosecuting Attorney's actions constitute violations of the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2701.

74.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

75.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

76.     That Plaintiff hereby claims reasonable attorney fees and expert fees

pursuant to 42 U.S.C. § 1988.

77.     That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to M.C.L. § 37.2801 and M.C.L. § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT I – RACE & NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983 & THE FOURTEENTH AMENDMENT AGAINST ALL DEFENDANTS

78.     That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 77 of his Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

79.     That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

80.     That the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protections of the laws."  U.S. CONST. amend. XIV, § 1.

81.     That the Equal Protection Clause protects against intentional

discrimination based on race or national origin.

82.    That a claim of discrimination brought under Section 1983 "must prove the same elements required to establish a disparate treatment claim under Title VII of the Civil Rights Act of 1964." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

83.    That at all times material hereto, Defendants acted under the color of State law.

84.    That Defendants subjected Plaintiff to discriminatory treatment based on his race and national origin.

85.    That Defendants Stanyar and Wayne County Prosecuting Attorney affected a term, condition, or privilege of Plaintiff's employment.

86.    That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of his race and national origin.

87.    That at all times material hereto, Plaintiff was and is qualified for the position of detective.

88.    That Defendants took adverse action against Plaintiff, causing the constructive termination of and/or constructively terminating Plaintiff's employment.

89.    That Plaintiff suffered said adverse action under circumstances that give rise to an inference of race or national origin discrimination.

90.     That Defendant Stanyar vocalized a discriminatory animus towards Plaintiff based on race or national origin through her false statements attributed to Plaintiff that he did not conduct investigation due to fear that his family in Mexico may be harmed and further conclusions derived therefrom.

91.     That Defendant Stanyar had a discriminatory bias towards Plaintiff.

92.     That Defendants Stanyar and Wayne County Prosecuting Attorney would have been substantially certain that making said false allegations against Plaintiff would result in the termination of his employment and pursuit of criminal charges against him.

93.     That Defendant City of Detroit relied upon the discriminatory flow of information from Defendants Stanyar and Wayne County Prosecuting Attorney.

94.     That Defendant City of Detroit directly relied upon memoranda prepared by Defendants Stanyar and Wayne County Prosecuting Attorney, including those memoranda displaying the discriminatory animus towards Plaintiff.

95.     That Defendant City of Detroit acted as the cat's paw for Defendants Stanyar and Wayne County Prosecuting Attorney.

96.     That Defendant City of Detroit adopted Defendants Stanyar's and Wayne County Prosecuting Attorney's discriminatory intent as its own.

97.     That any reasons proffered by Defendants for the actions taken against Plaintiff are pretextual in nature.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

98.    That any reasons proffered by Defendants for the actions taken against Plaintiff are either not based in fact, did not actually motivate the action taken, and/or were too insignificant to warrant the action taken.

99.    That Plaintiff's right to be free from discrimination based on race or national origin was clearly established.

100.   That Defendant Stanyar is not entitled to qualified immunity.

101.   That Defendants acted pursuant to the polices and customs adopted by the City of Detroit and the Wayne County Prosecuting Attorney.

102.   That Defendants' actions constitute race and national origin discrimination in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

103.   That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

104.   That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including,

but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

105.   That Plaintiff hereby claims reasonable attorney fees and expert fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – RACE & NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. 37.2202, AGAINST ALL DEFENDANTS

106.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 77 of his Common Allegations and paragraphs 78 through 105 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

107.   That the Michigan Elliott-Larsen Civil Rights Act makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of race or national origin.  M.C.L. § 37.2202(1)(a).

108.   That at all times material hereto, Defendant City of Detroit was an

"employer" as it had one or more employees.  M.C.L. § 37.2201(a).

109.   That at all times material hereto, Defendant Wayne County Prosecuting Attorney was an "employer" as she had one or more employees.   M.C.L. § 37.2201(a).

110.   That at all times material hereto, Defendant Stanyar was an "employer" as she was an agent of Defendant Wayne County Prosecuting Attorney.

111.   That Defendants subjected Plaintiff to discriminatory treatment based on his race and national origin.

112.   That Defendants Stanyar and Wayne County Prosecuting Attorney affected a term, condition, or privilege of Plaintiff's employment.

113.   That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of his race and national origin.

114.   That at all times material hereto, Plaintiff was and is qualified for the position of detective.

115.   That Defendants took adverse action against Plaintiff, causing the constructive termination of and/or constructively terminating Plaintiff's employment.

116.   That Plaintiff suffered said adverse action under circumstances that give rise to an inference of race or national origin discrimination.

117.   That Defendant Stanyar vocalized a discriminatory animus towards

Plaintiff based on race or national origin through her false statements attributed to Plaintiff that he did not conduct investigation due to fear that his family in Mexico may be harmed and further conclusions derived therefrom.

118.   That Defendant Stanyar had a discriminatory bias towards Plaintiff.

119.   That Defendants Stanyar and Wayne County Prosecuting Attorney would have been substantially certain that making said false allegations against Plaintiff would result in the termination of his employment and pursuit of criminal charges against him.

120.   That Defendant City of Detroit relied upon the discriminatory flow of information from Defendants Stanyar and Wayne County Prosecuting Attorney.

121.   That Defendant City of Detroit directly relied upon memoranda prepared by Defendants Stanyar and Wayne County Prosecuting Attorney, including those memoranda displaying the discriminatory animus towards Plaintiff.

122.   That Defendant City of Detroit acted as the cat's paw for Defendants Stanyar and Wayne County Prosecuting Attorney.

123.   That Defendant City of Detroit adopted Defendants Stanyar's and Wayne County Prosecuting Attorney's discriminatory intent as its own.

124.   That any reasons proffered by Defendants for the actions taken against Plaintiff are pretextual in nature.

125.   That any reasons proffered by Defendants for the actions taken against

Plaintiff are either not based in fact, did not actually motivate the action taken, and/or were too insignificant to warrant the action taken.

126. That Defendants' actions constitute race and national origin discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2202(1)(a).

127. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

128. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

129. That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to M.C.L. § 37.2801 and M.C.L. § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

**COUNT III – RACE & NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. 37.2302, AGAINST DEFENDANTS STANYAR & WAYNE COUNTY PROSECUTING ATTORNEY**

130.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 77 of his Common Allegations, paragraphs 78 through 105 of Count I, and paragraphs 106 through 129 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

131.   That the Michigan Elliott-Larsen Civil Rights Act makes prohibits a person from denying an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a public service because of race or national origin.  M.C.L. § 37.2302(a).

132.   That at all times material hereto, Defendant Wayne County Prosecuting Attorney is a "public service" as it is a department or agency of a political subdivision of this State.  M.C.L. § 37.2301(b).

133.   That Defendants subjected Plaintiff to discriminatory treatment based on his race and national origin.

134.   That at all times material hereto, Plaintiff was and is a member of a

protected class by virtue of his race and national origin.

135.    That Defendants denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of the prosecuting attorney's office by intentionally discriminating against Plaintiff.

136.    That Defendants made false, defamatory, and discriminatory statements about Plaintiff, claiming Plaintiff failed to fulfill his duties and deliberately obstructed justice.

137.    That Defendants were motivated by Plaintiff's race or national origin as evidenced by Defendant Stanyar's statements referenced above.

138.    That Defendant Stanyar had a discriminatory bias towards Plaintiff.

139.    That Defendants Stanyar and Wayne County Prosecuting Attorney would have been substantially certain that making said false allegations against Plaintiff would result in the termination of his employment and pursuit of criminal charges against him.

140.    That Defendants actions caused Plaintiff to lose his employment with the City of Detroit.

141.    That any reasons proffered by Defendants for the actions taken against Plaintiff are pretextual in nature.

142.    That any reasons proffered by Defendants for the actions taken against Plaintiff are either not based in fact, did not actually motivate the action taken, and/or

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

were too insignificant to warrant the action taken.

143.   That Defendants Stanyar's and Wayne County Prosecuting Attorney's actions constitutes race and national origin discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2302(a).

144.   That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

145.   That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

146.   That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to M.C.L. § 37.2801 and M.C.L. § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter

judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

### COUNT IV – VIOLATIONS OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2701, AGAINST DEFENDANT STANYAR & WAYNE COUNTY PROSECUTING ATTORNEY

147.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 77 of his Common Allegations, paragraphs 78 through 105 of Count I, paragraphs 106 through 129 of Count II, and paragraphs 130 through 146 of Count III, word for word and paragraph for paragraph, as if fully restated herein.

148.   That the Michigan Elliott-Larsen Civil Rights Act makes it unlawful for a person to aid, abet, incite, compel, or coerce a person to engage in a violation of the Act or to attempt directly or indirectly to commit an act prohibited by the Act. M.C.L. § 37.2701(b)-(c).

149.   That as outlined above, Defendants Stanyar and Wayne County Prosecuting Attorney attempted to directly or indirectly discriminate against Plaintiff.

150.   That as outlined above, Defendants Stanyar and Wayne County Prosecuting Attorney aided, abetted, or incited Defendant City of Detroit to discriminate against Plaintiff based on his race or national origin in violation of the

Act.

151.    That Defendants made false, defamatory, and discriminatory statements about Plaintiff, claiming Plaintiff failed to fulfill his duties and deliberately obstructed justice.

152.    That Defendants Stanyar and Wayne County Prosecuting Attorney would have been substantially certain that making said false allegations against Plaintiff would result in the termination of his employment and pursuit of criminal charges against him.

153.    That Defendants actions caused Plaintiff to lose his employment with the City of Detroit.

154.    That any reasons proffered by Defendants for the actions taken against Plaintiff are pretextual in nature.

155.    That any reasons proffered by Defendants for the actions taken against Plaintiff are either not based in fact, did not actually motivate the action taken, and/or were too insignificant to warrant the action taken.

156.    That Defendants Stanyar's and Wayne County Prosecuting Attorney's actions constitute violations of the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2701.

157.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but

not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

158. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

159. That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to M.C.L. § 37.2801 and M.C.L. § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>March 30, 2023</u>      By:   <u>*/s/ Victor J. Mastromarco, Jr.*</u>
                                VICTOR J. MASTROMARCO, JR. (P34564)
                                KEVIN J. KELLY (P74546)

Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COMES Plaintiff, MOISES JIMENEZ, by and through his attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all the above issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>March 30, 2023</u>    By:    */s/ Victor J. Mastromarco, Jr.*
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com